DAVID A. ROSENFELD, Bar No. 058163
ROBERTA D. PERKINS, Bar No. 153074
WEINBERG, ROGER & ROSENFELD
A Professional Corporation
1001 Marina Village Parkway, Suite 200
Alameda, California 94501
Telephone(510) 337-1001
Fax  (510) 337-1023
E-Mail:  drosenfeld@unioncounsel.net
           rperkins@unioncounsel.net

LOCKER FOLBERG LLP
Miles E. Locker, Bar No. 103510
235 Montgomery Street, Suite 835
San Francisco, CA  94104
Telephone:  415.962.1626
Fax:  415.962.1628
E-Mail: mlocker@lockerfolberg.com

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICTOF CALIFORNIA

GEORGE GALLARDO, CARLOS BARRAGAN, KYLE BINNS, CARLOS CRUZ, JENNIFER DE WITT, HECTOR RODRIGUEZ, DENISE ROMAN, individually and on behalf of all others similarly situated,

                              Plaintiffs,

          v.

AT&T MOBILITY, LCC, a limited liability corporation; and DOES 1 through 50, inclusive,

                              Defendant.

No. 4:11-cv-04749 CW

**PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS AND/OR STRIKE PLAINTIFFS' COMPLAINT PURSUANT TO FED R. CIV. P. 12(b)(6) AND/OR 12(f)**

Date:         September 20, 2012
Time:         2:00 p.m.
Dept.:        2, 4th Floor, Oakland
Judge:        Hon. Claudia Wilken

WEINBERG, ROGER & ROSENFELD
A Professional Corporation
1001 Marina Village Parkway, Suite 200
Alameda, California 94501
(510) 337-1001

Plaintiffs' Opposition to Motion to Dismiss and/or Strike Plaintiffs' Complaint (Case No. 4:11-cv-04749 CW)

## TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ................................................................................................1

II.  FACTS .............................................................................................................1

III.  ARGUMENT ...................................................................................................2

    A.  APPLICABLE STANDARDS ................................................................2

    B.  PLAINTIFFS' CLAIMS ARE NOT BARRED UNDER THE
        DOCTRINE OF RES JUDICATA ..........................................................3

        1.  Res Judicata is not Applicable .................................................3

        2.  There is no Waiver of the Right to Pursue Statutory
            Claims in the RLA .....................................................................4

    C.  THE NATURE OF PLAINTIFFS' WORK DOES NOT
        PRECLUDE SEATING...........................................................................6

        1.  The Plain Language of the Wage Order Permits the Use
            of Seats when the Nature of the Work Requires Standing.........7

        2.  Plaintiffs are not Required to Allege their "Entire
            Range" of Job Duties could be Performed While Seated ...........9

        3.  AT&T's "Business Judgment" does not Determine the
            Seating Issue ............................................................................10

    D.  PLAINTIFFS ARE NOT REQUIRED TO MEET RULE 23
        REQUIREMENTS IN ORDER TO MAINTAIN THE PAGA
        CLAIM...................................................................................................13

    E.  AN AWARD OF PAGA PENALTIES WOULD NOT BE
        UNJUST, ARBITRARY, OPPRESSIVE, OR
        CONFISCATORY ................................................................................16

    F.  THE UCL CLAIM IS VIABLE............................................................18

IV.  CONCLUSION................................................................................................19

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village Parkway, Suite 200
Alameda, California 94501
(510) 337-1001

i

Plaintiffs' Opposition to Motion to Dismiss and/or Strike Plaintiffs' Complaint (Case No. 4:11-cv-04749 CW)

# TABLE OF AUTHORITIES

**Page**

**FEDERAL CASES**

*Aleman v. Chugach Support Services, Inc.*,
    485 F.3d 206 (4th Cir.2007). ...................................................................5

*Alexander v. Gardner-Denver Co.*,
    415 U.S. 36, 53-54 (1974) ...................................................................3

*Broam v. Bogan*,
320 F.3d 1023 (9th Cir. 2003) ...................................................................2

*Brown v. Wal-Mart*,
    Case No. 09-03339, slip op. (N.D. Cal. Oct. 19, 2010) ........................17

*Burnside v. Kiewit Pacific Corp.*,
    491 F.3d 1053 (9th Cir.2007) ...................................................................6

*Calmat Co. v. U.S. Dep't of Labor*,
    364 F.3d 1117 (9th Cir. 2004) ...................................................................4

*Cardenas v. McLane Foodservice, Inc.*,
    2011 U.S. Dist. LEXIS 13126,
    2011 WL 379413, *2 (C.D. Cal. Jan. 31, 2011) ..........................14, 15

*Carson v. Giant Food, Inc.*
    175 F.3d 325 (4th Cir.1999). ...................................................................5

*Casida v. Sears Holding Corp.*,
    2012 U.S.D. Lexis 9302 (E.D. Cal. Jan. 25, 2012) ..............................16

*Clark v. Bear Sterns & Co.*,
    966 F.2d 1318 (9th Cir.1992) ...................................................................4

*Currie-White v. Blockbuster, Inc.*,
    2009 U.S. Dist. Lexis 68438 (N.D. Cal. Aug. 5, 2009) ........................17

*Eastern Assoc. Coal Corp. v. Massey*,
    373 F.3d 530 (4th Cir.2004) ...................................................................5

*Echavez v. Abercrombie and Fitch Co., Inc.*,
    2012 U.S. Dist. Lexis 34381 (C.D. Cal., March 12, 2012)..........7, 9, 17

*Garvey v. Kmart Corp.*,
    2012 U.S. Dist. Lexis 51705 (N.D. Cal. April 12, 2012) .....................8, 17

*Gilligan v. Jamco Dev. Corp.*,
    108 F.3d 246 (9th Cir.1997) ...................................................................2

*Gonzalez v. Millard Mall Svcs.*,
    2012 U.S. Dist. Lexis 28142 (S.D. Cal. Feb. 28, 2012).......................16

*Henry v. Lehman Commer. Paper, Inc.*,
    471 F.3d 977 (9th Cir.2006) ...................................................................18

*Holli Mendez v. Tween Brands, Inc.*,
    2010 U.S. Dist Lexis 66454, *7 (E.D. Cal. June 13, 2010 ...................14

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village Parkway, Suite 200
Alameda, California 94501
(510) 337-1001

Plaintiffs' Opposition to Motion to Dismiss and/or Strike Plaintiffs' Complaint (Case No. 4:11-cv-04749 CW)

## TABLE OF AUTHORITIES

**Page**

*James v. UMG Recordings, Inc.*,
  2012 U.S. Dist. LEXIS 55298, 10 (N.D. Cal. Apr. 19, 2012) .................................19

*Jonites v. Exelon Corp.*,
  522 F.3d 721 (7th Cir.2008) .................................................................................5

*Joson v. Permanente Med. Grp., Inc.*,
  2012 U.S. Dist. LEXIS 34376 (N.D. Cal. Mar. 1, 2012) ....................................4

*Kilby v. CVS Pharmacy, Inc.*,
  2012 U.S. Dist. Lexis 76507(S.D. Cal. May 31, 2012) .............................7, 8, 9, 17

*Kilby v. CVS Pharmacy, Inc.*,
  2010 U.S. Dist. Lexis 86515 (S.D. Cal. Aug 23, 2010) ......................................17

*Kirola v. City & County of San Francisco*,
  2011 U.S. Dist. LEXIS 4091 (N.D.Cal. Jan. 11, 2011) .......................................2

*Machado v. M.A.T. & Sons Landscape, Inc.*,
  2009 U.S.Dist. LEXIS 63414,
  2009 WL 2230788 (C.D. Cal. July 23, 2009) ....................................................15

*Martinez v. J. Fletcher Creamer & Son, Inc.*,
  2010 U.S. Dist. Lexis 93448 (C.D. Cal. 2010) ....................................................5

*McKenzie v. Federal Express Corp.*,
  765 F.Supp.2d 1222 (C.D. Cal., April 14, 2011 .................................................15

*Mendez v. Tween Brands, Inc.* ,
  2010 U.S. Dist.LEXIS 66454,
  2010 WL 2650571, *3 (E.D. Cal. July 1, 2010) ........................................14, 15, 16

*Moua v. IBM*, 2012 U.S. Dist. Lexis 11081, *10 (PAGA .............................13, 14, 16

*Murphy v. Target Corp.*,
  2010 U.S. Dist. Lexis 122178 (S.D. Cal. Jan. 11, 2010) ....................................17

*Ochoa-Hernandez v. CJADER Foods, Inc.*,
  2010 U.S. Dist. LEXIS 32774,
  2010 WL 1340777 (N.D. Cal. Apr. 2, 2010) ......................................................15

*Pareto v. FDIC*,
  139 F.3d 696, 699 (9th Cir.1998) ..........................................................................2

*Parks Sch. of Bus. Inc. v. Symington*,
  51 F.3d 1480 (9th Cir.1995) .................................................................................2

*Polich v. Burlington N., Inc.*,
  942 F.2d 1467 (9th Cir.1991) ...............................................................................3

*Sample v. Big Lots Stores, Inc.*,
  2010 U.S. Dist. LEXIS 131130,
  2010 WL 4939992 (N.D. Cal. Nov.30, 2010) ....................................................15

*Shady Grove Orthopedic Associates P.A. v. Allstate Ins. Co.*,
  130 S.Ct. 1431 (2010).........................................................................................14

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village Parkway, Suite 200
Alameda, California 94501
(510) 337-1001

## TABLE OF AUTHORITIES

**Page**

*Stanbury Law Firm v. I.R.S.*,
  221 F.3d 1059 (8th Cir.2000) ......................................................2

*Thomas v. Aetna Healthcare of Cal.*,
  2011 U.S. Dist. Lexis 59377 at * 38 (E.D. Cal., June 2, 2011) ..............15

*United States v. City of Redwood*,
  640 F.2d 963 (9th Cir.1981) ......................................................2

*Valles v. Ivy Hill Corp.*,
  410 F.3d 1071 (9th Cir.2004) ......................................................6

*Vartanian v. Nationwide Legal, Inc.*,
  2012 U.S. Dist. LEXIS 78059,
  4 (N.D.Cal. June 5, 2012) ......................................................2

*Willner v. Manpower, Inc.*,
  2012 U.S. Dist. Lexis 62227, *26 (N.D. Cal. May 3, 2012)...................13, 14, 15, 16

*Wright v. Universal Maritime Service Corp.*,
  525 U.S. 70 (1998)......................................................4, 5

**STATE CASES**

*Aryeh v. Canon Business Solutions, Inc.*,
  185 Cal. App. 4th 1159 (2010),
  review granted, 116 Cal. Rptr. 3d 881, 240 P.3d 823
  (Oct. 20, 2010, [S184929]) ......................................................19

*Bright v. 99¢ Only Stores*,
  189 Cal.App.4th 1472 (2010) ......................................................6, 7, 9, 17

*Cal. Manufacturers Assn. v. Ind. Welfare Comm.*,
  190 Cal.App.3d 95 (1980) ......................................................6

*Green v. State of California*,
  42 Cal.4th 254,264 (2007) ......................................................6

*Grisham v. Phillip Morris U.S.A., Inc.*,
  40 Cal. 4th 623 (2007) ......................................................19

*Home Depot, USA, Inc. v. Superior Court*
  191 Cal.App.4th 210 (2011) ......................................................7, 17

*Ind. Welfare Comm. v. Superior Court*,
  27 Cal.3d 690 (1980), ......................................................6, 9

*Murphy v. Kenneth Cole Productions, Inc.*,
  40 Cal.4th 1094 (2007) ......................................................6

*Ramirez v. Yosemite Water Co.*,
  20 Cal.4th 785 (1999) ......................................................9

*U.S.A., Inc. v. Superior Court*,
  191 Cal.App.4th 210 (2011) ......................................................7, 19

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village Parkway, Suite 200
Alameda, California 94501
(510) 337-1001

iv

## TABLE OF AUTHORITIES

**Page**

**STATUTES**

California Business & Professions Code § 17203 ....................................................................1, 18

California Labor Code § 1173 ........................................................................................................6

California Labor Code § 1185 ........................................................................................................6

California Labor Code § 2698 .......................................................................................................1

California Labor Code  § 2699 ...............................................................................................15, 18

**RULES**

Federal Rules and Civil Procedure 12(f) ......................................................................................2

Federal Rules and Civil Procedure 15(a) .....................................................................................3

Federal Rules and Civil Procedure 23 ................................................................................. passim

**REGULATIONS**

California Code of Regulations Title 8 § 11070(14)(B) ..............................................................17

IWC Wage Order 7-2001 § 14................................................................................................ passim

**WEINBERG, ROGER &
ROSENFELD**
A Professional Corporation
1001 Marina Village Parkway, Suite 200
Alameda, California 94501
(510) 337-1001

Plaintiffs' Opposition to Motion to Dismiss and/or Strike Plaintiffs' Complaint (Case No. 4:11-cv-04749 CW)

## I.    INTRODUCTION

Defendant AT&T Mobility LLC ("AT&T" or "Defendant") moves to dismiss this action on the grounds it is barred under the doctrine of res judicata.  Even if the action is not barred, AT&T argues that Plaintiffs' claim fails as a matter of law because the nature of the work performed by Plaintiffs requires standing, and that any award of penalties under the Industrial Wage Commission ("IWC") Wage Orders would be unjust, arbitrary, oppressive, and confiscatory as a matter of law.  AT&T additionally argues the UCL claim for injunctive relief is time barred and attacks the action as procedurally improper because Plaintiffs fail to comply with the requirements for class certification under Rule 23 of the Federal Rules of Civil Procedure.

AT&T's motion misses the mark.  Notwithstanding the prior grievance on the issue, Plaintiffs' complaint is not barred by res judicata.  In this representative action Plaintiffs seek to enforce statutory rights and recover civil penalties for AT&T's violation of § 14 of IWC Wage Order 7-2001 ("IWC 7, § 14"), an issue that was not resolved by the arbitrator.  Contrary to its argument, AT&T's business judgment that the nature of the work performed by Plaintiffs requires standing does not nullify Plaintiffs' claims as a matter of law.  The UCL claim, which seeks only injunctive relief under Business & Professions Code § 17203 to redress the violation of IWC 7, § 14, is timely asserted.

Finally, AT&T's motion to strike allegations that the complaint is brought on behalf of other current and former employees of AT&T, the allegations for civil penalties under the Private Attorneys General Act of 2004, Cal. Labor Code § 2698, *et seq.* ("PAGA") must be denied.  The PAGA claims do not require compliance with Rule 23; however, should the Court determine otherwise, Plaintiffs should be granted leave to amend the complaint.

## II.    FACTS

The facts are essentially undisputed.  As set forth in the complaint, Plaintiffs and the workers they represent are current and former Retail Sales Consultants ("RSC") for AT&T, who work or have worked in one or more of the approximately 330 AT&T retail stores throughout California.  Ex.A, ¶¶ 1-7, 13.  In 2005, AT&T began removing existing seating from its retail stores, installed counters for computer terminals, and required RSCs to stand behind the counter

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village Parkway, Suite 200
Alameda, California 94501
(510) 337-1001

1

Plaintiffs' Opposition to Motion to Dismiss and/or Strike Plaintiffs' Complaint (Case No. 4:11-cv-04749 CW)

1    to conduct customer transactions.  *Id.*, ¶¶ 17, 22.  Plaintiffs allege there is nothing in the design of

2    the retail stores that would prevent behind-the-counter seating and that the nature of the work

3    performed by RSCs would not be hindered or negatively impacted by providing seating for RSCs

4    while they worked behind the counter.  *Id.* ¶¶ 18, 19.

5         In order to support its res judicata argument, AT&T provides a summary of proceedings

6    under the AT&T/Communication Workers of America ("CWA") collective bargaining agreement

7    that occurred before this action was filed.  Plaintiffs concede that one of the named Plaintiffs in

8    this action, George Gallardo, was acting in his capacity as a Union steward when he filed the

9    grievance against AT&T.  Of course, Gallardo is also a retail sales consultant employed by

10   AT&T who was affected by the removal of the seating.  Plaintiffs concede an arbitration was

11   conducted and a decision issued, but do not agree that the arbitration decision is controlling.

12                                **III.    ARGUMENT**

13   **A.    APPLICABLE STANDARDS**

14        A Rule 12(b)(6) motion is generally "viewed with disfavor and is rarely granted." *Broam*

15   *v. Bogan*, 320 F.3d 1023, 1028 (9th Cir. 2003), citing *Gilligan v. Jamco Dev. Corp.*, 108 F.3d

16   246, 249 (9th Cir.1997). "Dismissal without leave to amend is proper only in 'extraordinary'

17   cases. *United States v. City of Redwood*, 640 F.2d 963, 966 (9th Cir.1981). When ruling on a

18   12(b)(6) motion, the complaint must be construed in the light most favorable to the plaintiff.

19   *Parks Sch. of Bus. Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir.1995). The court must accept as

20   true all material allegations in the complaint, as well as any reasonable inferences to be drawn

21   from them. *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir.1998)."  *Broam*, 320 F.3d at 1028.

22        Similarly, "motions to strike under Fed.R.Civ.P. 12(f) are viewed with disfavor and are

23   infrequently granted.  *Stanbury Law Firm v. I.R.S.*, 221 F.3d 1059, 1063 (8th Cir.2000) (internal

24   quotations omitted)."  *Kirola v. City & County of San Francisco*, 2011 U.S. Dist. LEXIS 4091, 5

25   (N.D.Cal.Jan. 11, 2011).  This is because striking a party's pleadings is a "drastic remedy"

26   *Vartanian v. Nationwide Legal, Inc.*, 2012 U.S. Dist. LEXIS 78059, 4 (N.D.Cal. June 5, 2012),

27   citing *Stanbury*, which should not be lightly imposed.

28   ///

**WEINBERG, ROGER & ROSENFELD**
A Professional Corporation
1001 Marina Village Parkway, Suite 200
Alameda, California 94501
(510) 337-1001

2

Plaintiffs' Opposition to Motion to Dismiss and/or Strike Plaintiffs' Complaint (Case No. 4:11-cv-04749 CW)

1    "Dismissal without leave to amend is improper unless it is clear that the complaint could

2    not be saved by any amendment." *Polich v. Burlington N., Inc.*, 942 F.2d 1467, 1472 (9th

3    Cir.1991).  Leave to amend "shall be freely given when justice so requires." Fed.R. Civ. P. 15(a).

4    **B.    PLAINTIFFS' CLAIMS ARE NOT BARRED UNDER THE DOCTRINE OF RES**

5    **JUDICATA**

6          AT&T argues that the claims asserted in this action are barred under the doctrine of res

7    judicata because they involve the same cause of action asserted in the grievance proceedings

8    between the Union and AT&T, there was a final judgment on the merits in the grievance

9    proceeding, and the parties to this action are the same or in privity with the parties to the

10   grievance proceeding.  AT&T's argument does not hold up under scrutiny.

11          **1.    Res Judicata is not Applicable**

12          The grievance proceedings originated by virtue of the Regional Labor Agreement

13   ("RLA") between the Union representing RSCs, the CWA and AT&T.  Under the RLA, the

14   parties agree that "grievances shall be confined to differences arising out of the interpretation and

15   application of the terms or provisions of this agreement…." Ex. B, p. 8, Art. 7, § 2.  Arbitration

16   is "confined to matters processed through all steps of the formal grievance procedure," and the

17   arbitrator is "limited in power and jurisdiction to determine whether there has been a violation of

18   this Agreement."  *Id.*, p. 13, Art.9, §§ 1, 4.

19          "[A] labor arbitrator has authority only to resolve questions of contractual rights.  The

20   arbitrator's task is to effectuate the intent of the parties and he or she does not have the general

21   authority to invoke public laws that conflict with the bargain between the parties."  *Alexander v.*

22   *Gardner-Denver Co.*, 415 U.S. 36, 53-54 (1974).  The only determination the arbitrator could

23   properly make is whether the removal of seating violated Art. 16, § 1 of the RLA[1]; and that was

24   the decision reached—"removal of seating does not violate the terms of the CBA," *Id.*, p. 11, but

25

26

27   ─────────────────────
[1]    In its post-hearing arbitration brief, AT&T argued the arbitrator had no power to determine
the state law claims. Ex. 1.  It should now be estopped to assert a contrary position in this
litigation.

28
**WEINBERG, ROGER &**
**ROSENFELD**
A Professional Corporation
1001 Marina Village Parkway, Suite 200
Alameda, California 94501
(510) 337-1001

3

1   AT&T's failure to bargain with the Union over the removal of seating was in violation of Art. 2

2   of the RLA. *Id.*, p. 10. The appropriate remedy was ordering the parties to bargain.[2]

3        While it is true that "an arbitration decision can have res judicata or collateral estoppel

4   effect, *Clark v. Bear Sterns & Co.*, 966 F.2d 1318, 1321 (9th Cir.1992), that effect arises only

5   under specific conditions: "(1) the issue at stake must be identical to the one alleged in the prior

6   proceedings; (2) the issue must have actually been litigated in the prior litigation; and (3) the

7   determination of the issue in the prior litigation *must have been a critical and necessary part of*

8   *the judgment* in the earlier action." *Id.* at 1320, emphasis added. None of these elements are

9   satisfied. There are different issues—AT&T's violation of the RLA versus its violation of IWC

10  7, § 14; it is not clear that the violation of state law was actually litigated and it surely was not

11  determined with clarity and certainty by the arbitrator; and the violation of state law clearly is not

12  a "critical and necessary part" of the arbitrator's decision ordering the parties to negotiate.

13       The Ninth Circuit has held that preclusion is inappropriate for claims arising under

14  employee protection laws, reasoning that "[w]hile courts should defer to an arbitral decision when

15  the employee's claim is based on rights arising out of the collective-bargaining agreement,

16  different considerations apply where the employee's claim is based on rights arising out of a

17  statute designed to provide minimum substantive guarantees to individual workers." *Calmat Co.*

18  *v. U.S. Dep't of Labor*, 364 F.3d 1117, 1126 (9th Cir. 2004); see also *Joson v. Permanente Med.*

19  *Grp., Inc.*, 2012 U.S. Dist. LEXIS 34376, 9-10 (N.D. Cal. Mar. 1, 2012) (citing *Calmat*, rejecting

20  claim that findings in arbitration under CBA had preclusive effect in subsequent civil litigation

21  for violation of statutory rights).

22        **2.    There is no Waiver of the Right to Pursue Statutory Claims in the RLA**

23       In *Wright v. Universal Maritime Service Corp.*, 525 U.S. 70 (1998), the Supreme Court

24  recognized that waiver of the right to pursue a statutory claim in court must be "clear and

25  unmistakable." *Id.* at 80. General language, such as the language in the RLA does not meet this

26  standard. *Ibid.* (rejecting language providing for arbitration of "matters in dispute"). The

---

[2]  Even assuming the arbitrator could have determined whether there was a violation of state law, he could not have awarded penalties under PAGA because procedural prerequisites would not have been satisfied. See Cal. Lab. Code § 2699.3.

WEINBERG, ROGER & ROSENFELD
A Professional Corporation
1001 Marina Village Parkway, Suite 200
Alameda, California 94501
(510) 337-1001

1   standards articulated in *Wright* have been applied to the arbitrability of other state and federal

2   statutory claims.  See, e.g., *Jonites v. Exelon Corp.*, 522 F.3d 721, 725 (7th Cir.2008) ("*Wright*

3   was a discrimination case, but we can assume that its holding applies to other statutory rights…");

4   *Eastern Assoc. Coal Corp. v. Massey*, 373 F.3d 530 (4th Cir.2004) (applying *Wright* to statutory

5   claims); *Martinez v. J. Fletcher Creamer & Son, Inc.*, 2010 U.S. Dist. Lexis 93448, 8-10 (C.D.

6   Cal. 2010) (*Wright* applicable to state law wage and hour claims).

7          The "clear and unmistakable" waiver requirement can be satisfied through two possible

8   means.  *Carson v. Giant Food, Inc.* 175 F.3d 325, 331 (4th Cir.1999).  First, intent can be

9   demonstrated through an "explicit arbitration clause" pursuant to which the Union expressly

10  agrees to submit all statutory claims to arbitration.  *Id.* at 331-332.  Under this approach, the

11  forum waiver must be "explicitly stated."  *Wright*, 525 U.S. at 80.  No such explicit waiver clause

12  exists in the RLA.  Second, where the arbitration clause is "not so clear," employees may be

13  bound to arbitrate statutory claims if another provision in the CBA makes it "unmistakably clear"

14  that the statutes are part of the agreement.  *Carson*, 175 F.3d at 332.  Under either method, the

15  CBA must "eliminate any doubt" that a waiver was intended before access to a judicial forum for

16  statutory claims will be barred.  *Aleman v. Chugach Support Services, Inc.*, 485 F.3d 206, 216

17  (4th Cir.2007).

18         AT&T cannot meet this standard.  The RLA specifically does not waive any right by

19  either the Union or a worker covered by the Agreement to bring an action in court.  Under the

20  RLA, neither party "waive[s] any right, legal or equitable, which it would otherwise have except

21  as specifically defined and provided for in [the] Agreement…."  Ex. B, p. 41, Art. 26, § 2.  There

22  are no "clear and unmistakable" clauses in the RLA through which a waiver can be accomplished.

23  Under *Wright*, Plaintiffs must be permitted to pursue their statutory claims arising under IWC 7, §

24  14.

25  ///

26  ///

27  ///

28  ///

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village Parkway, Suite 200
Alameda, California 94501
(510) 337-1001

5
Plaintiffs' Opposition to Motion to Dismiss and/or Strike Plaintiffs' Complaint (Case No. 4:11-cv-04749 CW)

Moreover, the claims Plaintiffs assert in this action are not subject to waiver.  The right to seating as reflected in IWC 7, § 14 is a statutory right conferred on workers.[3]  The seating requirement is a "standard condition of labor" fixed by the IWC.  "Such conditions 'shall be … the standard conditions of labor for employees,' *Bright v. 99¢ Only Stores*, 189 Cal.App.4th 1472, 1478 (2010); *Green v. State of California*, 42 Cal.4th 254,264 (2007) (conditions of labor fixed by the IWC "shall be" the standard conditions of labor), without regard to whether the employees are covered by a bargaining agreement.  The ability to bring an action to redress a violation of statutory rights under PAGA is similarly a legal right that cannot be extinguished or waived by parties to a collective bargaining agreement.  *Valles v. Ivy Hill Corp.*, 410 F.3d 1071, 1076 (9th Cir.2004).  A claim brought in state court on the basis of a state-law right is "independent of rights under the collective-bargaining agreement."  *Id*.  Nonnegotiable state rights conferred on individual employees cannot be waived in a collective bargaining agreement; they remain with the employee.  *Burnside v. Kiewit Pacific Corp.*, 491 F.3d 1053, 1069-1070 (9th Cir.2007).  The right to recover civil penalties under PAGA exists independent of the RLA, is not subject to waiver, and can be maintained notwithstanding the grievance procedure and arbitration.

## C.   THE NATURE OF PLAINTIFFS' WORK DOES NOT PRECLUDE SEATING

AT&T argues that Plaintiffs cannot maintain their claims as a matter of law because the nature of their work, as a whole requires standing.  According to AT&T, if the nature of the work as determined by AT&T requires standing, then the nature of the work cannot reasonably permit the use of seats.  Alternatively, AT&T argues that Plaintiffs have not and cannot allege that the nature of their entire range of work duties can be performed while seated.  Mtn., 13:7-10.  AT&T is wrong on all counts.

---

[3]   The IWC is charged with a "continuing duty" to ascertain, among other things, "the conditions of labor and employment in the various occupations, trades, and industries in which employees are employed in this state, and to investigate the health, safety, and welfare of those employees."  Cal. Lab. Code § 1173.  "[T]he IWC may adopt wage orders relating to the health and safety of workers, *Ind. Welfare Comm. v. Superior Court*, 27 Cal.3d 690, 719 (1980), which includes seating for workers.  *Cal. Manufacturers Assn. v. Ind. Welfare Comm.*, 190 Cal.App.3d 95, 117 (1980).  Even though defunded, the IWC's wage orders remain in effect.  *Murphy v. Kenneth Cole Productions, Inc.*, 40 Cal.4th 1094, 1102, n. 4 (2007); see also Cal. Lab. Code § 1185 (IWC orders fixing standard conditions of labor for all employees "shall be valid and operative.")

WEINBERG, ROGER & ROSENFELD
A Professional Corporation
1001 Marina Village Parkway, Suite 200
Alameda, California 94501
(510) 337-1001

1  **1.**  <u>**The Plain Language of the Wage Order Permits the Use of Seats when the Nature of the Work Requires Standing**</u>

As the Court is likely aware, there are a handful of district court decisions involving the application of IWC 7, § 14, and there is no consensus.[4]  AT&T relies on a 2005 decision from the San Francisco Superior Court,[5] and *Kilby v. CVS Pharmacy, Inc.*, 2012 U.S. Dist. Lexis 76507(S.D. Cal. May 31, 2012) for the proposition that "if the nature of the work requires standing, then the nature of the work cannot reasonably permit the use of seats."  Mtn. 11:9-12.  The Central District does not share that opinion, and the Northern District has yet to opine on this particular issue.

In *Echavez v. Abercrombie and Fitch Co., Inc.*, 2012 U.S. Dist. Lexis 34381 (C.D. Cal., March 12, 2012), plaintiff, a retail sales employee, brought an action asserting a violation of IWC 7, § 14 for failure to provide suitable seating for retail sales employees.  Like the RSCs in this case, the employees at Abercrombie and Fitch performed some duties that required standing, as well as cashier work.  *Id.* at *7.  Abercrombie moved to dismiss the complaint arguing, similar to AT&T here, that § 14 could not apply to plaintiff's employment, which required standing, "because § 14 specifically states that suitable seats are to be provided only 'when the nature of the work reasonably permits the use of seats.'"  *Id.* at 11.  The court rejected this argument:

> First, because the performance of many of Plaintiff's duties 'required standing' does not outrule the possibility that the use of seats could not reasonably be permitted <u>at any time</u>, for example, when Plaintiff worked behind the sales counter.  Second, this argument ignores the plain language of subsection B that, even where the nature of the work requires standing, employees must be permitted to use seats placed within reasonable proximity when not engaged in the active duties of their employment.  *Id.* at **11-12.

---

[4] There are an equally limited number of state court cases addressing this particular issue.  In *Bright* and *Home Depot U.S.A., Inc. v. Superior Court*, 191 Cal.App.4th 210 (2011) the Second Appellate District held that an employee can assert cause of action for civil penalties under PAGA for violation of IWC 7, § 14.

[5] AT&T asks the court to take judicial notice of the 2005 order of the San Francisco Superior Court granting summary judgment in *Hamilton v. San Francisco Hilton, Inc.*, Ex. E.  This superior court decision carries no precedential weight, is not binding on this Court, and need not be considered.

WEINBERG, ROGER & ROSENFELD
A Professional Corporation
1001 Marina Village Parkway, Suite 200
Alameda, California 94501
(510) 337-1001

1   Reading § 14 subsections (A) and (B) together, the court went on to find that for persons, like the

2   RSCs "for whom the nature of the work requires standing, the employer is under an affirmative

3   obligation to place suitable seats 'in reasonable proximity to the work area' to permit their use

4   when it does not interfere with the performance of the employees' job duties." *Id.* at *14.

5       Similarly, in *Garvey v. Kmart Corp.*, 2012 U.S. Dist. Lexis 51705 (N.D. Cal. April 12,

6   2012), Judge Alsup denied Kmart's motion for summary judgment on claims for violation of

7   IWC 7, § 14. The argument that § 14(A) excluded retail sales persons in the mercantile industry

8   was rejected—§ 14(A) "expressly covers *all* working employees … when the nature of the work

9   reasonably permits the use of seats." *Id.* at *4. The court also found the language of § 14

10  "suggests a mandatory obligation to provide seats" without condition. *Id.* at *7.

11      The Central District's analysis of § 14 implicitly recognizes the temporal issue that arises

12  when an employee is required to stand to perform some job duties but not others. Under AT&T's

13  interpretation of § 14, an employee who is required to stand 10% of the time to perform job duties

14  is required to stand 100% of the time. The *Echavez* decision and the Court's conclusions in

15  *Garvey* correctly acknowledge that sometimes the nature of the work, such as standing behind the

16  sales counter, reasonably permits the use of seats. This recognition comports with the mandatory

17  requirement of IWC 7, § 14 that seating be provided, protects the health and welfare of

18  employees like RSCs, whose job duties require standing some, but not 100% of the time, and

19  respects an employer's business expectations.

20      *Kilby*, which was determined on summary judgment, is not controlling. In *Kilby*, there

21  was undisputed evidence that CVS expected cashiers to perform the majority of job duties while

22  standing, and indeed, that employees were told during the initial interview and from the day they

23  were hired that they would be expected to stand and were in fact trained to "be ready to perform

24  any one of a multitude of job duties that require being on their feet." *Id.*, 2012 U.S. Dist. Lexis

25  76507, *18. Based on this undisputed evidence, the Southern District concluded that the nature

26  of the work at CVS required standing and that § 14(A) did not apply. *Cf. Garvey*, where

27  summary judgment was denied because there were genuine issues of material fact as to whether

28  the nature of a Kmart cashier's work reasonably permits the use of seats. No such evidence is

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village Parkway, Suite 200
Alameda, California 94501
(510) 337-1001

8

Plaintiffs' Opposition to Motion to Dismiss and/or Strike Plaintiffs' Complaint (Case No. 4:11-cv-04749 CW)

before the Court at this time.

In their complaint Plaintiffs allege that all seating has been removed from AT&T retail stores, Ex. A, 4:18-19, and that AT&T has refused to provide "any seating for its Customer Service Representatives." *Id.*, 4:25-26, 5:17-20.  These allegations are sufficient to state a claim under IWC 7, § 14(A), and clearly defeat AT&T's argument that the complaint does not state a claim for violations of 14(B).  Mtn. at 15:19-16:6.  Should the Court disagree, dismissal with prejudice, as requested by AT&T is not proper; leave to amend should be granted.

### 2.   Plaintiffs are not Required to Allege their "Entire Range" of Job Duties could be Performed While Seated

Based on the *Kilby* decision AT&T contends Plaintiffs' IWC 7, § 14 claim also fails because Plaintiffs do not allege that their entire range of job duties could be performed while sitting.  The plain language of § 14 does not permit such a rigid interpretation; indeed, as the Central District found in *Echavez*, the mere fact that some RSC duties require standing does not foreclose using seats for other purposes where the "nature of the work" clearly does not require standing, such as working behind a sales counter or waiting for customers to come into the store.

The seating requirements of § 14 are part of the "standard conditions of labor demanded by the health and welfare of [employees]."  *IWC v. Superior Court*, 27 Cal.3d at 701.  "[I]n light of the remedial nature of the legislative enactments authorizing the regulation of wages, hours and working conditions for the protection and benefit of employees, the statutory provisions are to be liberally construed with an eye to promoting such protection."  *Bright,* 189 Cal.App.4th at 1478, citing *IWC v. Superior Court*, *Ramirez v. Yosemite Water Co.*, 20 Cal.4th 785, 794 (1999).  AT&T's restrictive interpretation of § 14 is wholly inconsistent with the remedial purpose of protecting the health and welfare of retail sales employees like the RSCs.  Plaintiffs are not required to establish that all of their job duties can be performed while seated in order to obtain the benefit of IWC 7, § 14.  If there are time periods when RSCs are performing no work except waiting for customers performing work for which seats would be reasonable—such as unobtrusive, minimal ergonomic seating like leaning bars—they are entitled to relief.

///

WEINBERG, ROGER & ROSENFELD
A Professional Corporation
1001 Marina Village Parkway, Suite 200
Alameda, California 94501
(510) 337-1001

9

3.   **AT&T's "Business Judgment" does not Determine the Seating Issue**

Contrary to AT&T's assertions, an employer preference to have its employees standing while working is not relevant, let alone determinative, as to whether the nature of the work reasonably permits the use of seats.  The whole idea behind wage order working condition requirements is to limit employer discretion when it comes to regulated working conditions; to replace this otherwise unfettered discretion with regulation—specifically, regulation that serves a remedial purpose, to protect employees.  An employer-imposed "requirement to stand" cannot trump the wage order's seating requirement if "the nature of the work reasonably permits the use of seats."  An employer cannot escape its obligation to provide seats by making its preference for standing (because customers will be more "impressed" by the image of workers standing, ready to serve) any more than an employer can escape its obligations under Title VII by asserting that customers will be more likely to patronize the employer if it only hires white males to serve those customers.  The employer's preference (even if based on alleged customer preferences) is of no moment as to whether "the nature of the work reasonably permits the use of seats."  The history of the IWC's seating requirements leaves no room for doubt that the purpose of the seating requirement is to advance the welfare and comfort of employees, and that these seating requirements are intended to supplant contrary employer practices.

A seating requirement has been part of the IWC orders for nearly one hundred years, and the current language has been unchanged since 1980.  Section 14 of IWC Order 7-80, which was adopted on September 7, 1979 to take effect on January 1, 1980, stated:

> (A) All working employees shall be provided with suitable seats when the nature of the work reasonably permits the use of seats.
>
> (B) When employees are not engaged in the active duties of their employment and the nature of the work requires standing, an adequate number of suitable seats shall be placed in reasonable proximity to the work area and employees shall be permitted to use such seats when it does not interfere with the performance of their duties.  Ex. 2

This is the same language that appears in the current version of the applicable wage order, IWC 7. Ex. 3.

///

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village Parkway, Suite 200
Alameda, California 94501
(510) 337-1001

10

Plaintiffs' Opposition to Motion to Dismiss and/or Strike Plaintiffs' Complaint (Case No. 4:11-cv-04749 CW)

1    The IWC issued two opinion letters contemporaneously with its most recent revision of

2    the seating requirements for mercantile industry employers.  First, on December 28, 1979 (two

3    and a half months after the IWC adopted the seating requirements contained in Order 7-80 that

4    have been unchanged since), the IWC noted that Wage Order 7-80 was set to take effect on

5    January 1, 1980, and that "[i]t may be that the nature of the work would reasonably permit

6    employees to sit on stools at their work, in which case 'All working employees should be

7    provided with suitable seats.'"  Ex. 4.  The letter explained that any such determination would not

8    be left to the discretion of the employer, but rather, "[a]n investigator from the Division of Labor

9    Standards Enforcement would have to make the judgments involved."  Nothing in the letter even

10   remotely suggested that an employee is only entitled to a seat at the discretion of an employer, on

11   the basis of the employer's business judgment.  Quite the opposite: if the nature of the work

12   reasonably permits employees to sit, "all working employees shall be provided with suitable

13   seats."

14       Another significant exchange of correspondence on this issue took place in early 1982,

15   two years after the effective date of the 1980 wage order's seating requirements.  The focus of

16   this exchange of correspondence was on whether an employer can satisfy its obligation to provide

17   seats to employees by providing chairs in an employee break room and/or cafeteria for use during

18   meal and required rest periods.  This question arose as the result of a grievance between Local

19   1100 of the Department Store Employees Union and Macy's.  In a letter dated March 31, 1982 to

20   Richard Williams of the Department Store Employees Union, Macy's rejected the union's

21   position that IWC Order 7-80 required the employer to "provide chairs to sales employees who

22   are not actually engaged in a sale."  Instead, Macy's argued that it was only obligated "to provide

23   chairs for employees during their break and lunch periods," and that it "meets this obligation by

24   providing chairs in the employee lounge area and cafeteria."  Ex. 5.  By letter dated April 6, 1982

25   to the Chairperson of the IWC, Mr. Williams asked for clarification from the IWC as to whether

26   the seating requirements, set out at Section 14 of IWC Order 7-80, apply to sales clerks on a

27   department store's "selling floor."  The IWC response, dated May 4, 1982, authored by the IWC's

28   then Executive Officer, Margaret T. Miller, clarified the IWC's intent with respect to seating

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village Parkway, Suite 200
Alameda, California 94501
(510) 337-1001

11

Plaintiffs' Opposition to Motion to Dismiss and/or Strike Plaintiffs' Complaint (Case No. 4:11-cv-04749 CW)

1   requirements:

> The intent of the Commission, long established in the record, is that
> the requirement to provide seats applies to employees at work
> during their working time, not during meal and rest periods.  The
> Commission's Statement of the Basis for the Seats Section of the
> 1976 orders, which was validated by the courts, states in part: '[The
> IWC] continues to find that humane consideration for the welfare of
> employees requires that they be allowed to sit at their work or
> between operations when it is feasible for them to do so....''  Ex. 6.

The requirement that employees "be allowed to sit at their work or between operations when it is feasible for them to do so" makes it clear that employees whose work involves a mix of tasks, some of which can only be performed standing, while others of which can reasonably be performed while sitting, must be provided with seats that can be used for sitting while performing tasks that can be performed while seated, between tasks that can only be performed while standing.  There is nothing in the IWC order or the Statement of the Basis or in either of the opinion letters that were issued in 1979 and 1982 that would suggest that an employer can comply with seating requirements by only providing seats to its employees during rest and meal periods.  Likewise, there is nothing in the wage order, the Statement as to the Basis, or either of these opinion letters that would suggest that employees who spend some part of the workday performing tasks that require standing need not be provided with seats to use for performing tasks that can reasonably be performed while sitting.

This then brings us to the two subsequent letters cited by AT&T.  Both of these subsequent letters completely ignore the IWC's prior, contemporaneous interpretations of the seating requirements set out in Order 7-80.  In a letter dated December 5, 1986, Ex. F, chief deputy labor commissioner Reyff blithely asserts, without citing any IWC source documents, that the seating section of the wage order "was originally established to cover situations where work is usually performed in a sitting position with machinery, tools or other equipment," and "was not intended to cover those positions where the duties require employees to be on their feet, such as salespersons in the mercantile industry."  Similarly, the letter issued on January 13, 1987 by then IWC executive officer Karla Yates, Ex. G, failed to discuss the prior letters on this subject issued in December 1979 and May 1982 by her immediate predecessor at the IWC, Margaret T. Miller.

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village Parkway, Suite 200
Alameda, California 94501
(510) 337-1001

12

Plaintiffs' Opposition to Motion to Dismiss and/or Strike Plaintiffs' Complaint (Case No. 4:11-cv-04749 CW)

1  Yates' letter simply repeats Reyff's unfounded assertion that "this section [on seating

2  requirements] was originally intended for work performed in a sitting position, e.g., typing."  Her

3  letter suggests that an employer may comply with seating requirements for salespeople by merely

4  providing those employees with seats during their rest and meal periods—a suggestion that is

5  completely at odds with the analysis that was set forth in the IWC's letter of May 4, 1982, and

6  with the IWC's Statement as to the Basis for Wage Order, referenced therein.

7      AT&T's reliance on the San Francisco trial court's order in *Hamilton v. San Francisco*

8  *Hilton, Inc.,* Ex. E, is similarly misplaced.  In his decision, Judge Quidachay noted—

9  erroneously—that neither the IWC nor the DLSE, in the over 90 year history of § 14, has ever

10  interpreted the regulation to require that a seat be provided if "some unstated percentage of the

11  job could be performed while seated, with the remaining performed while standing."  But that is

12  exactly how the IWC in its Statement as to the Basis and how the IWC's executive officer in her

13  1982 letter on this subject interpreted that regulation

14      Under the bizarre argument advanced by AT&T, the employer of a secretary whose job

15  duties include typing, answering the telephone, filing, copying documents, and delivering the

16  mail to other employees in an office, would not be required to provide the secretary with a chair

17  because some portion, no matter how insignificant, of the secretary's daily work tasks can only be

18  performed while standing.  The mere recitation of the logical consequences of the defendant's

19  argument, of course, signals the extreme tenuousness of this contention.  It is an argument that

20  makes a mockery of the purpose and intent of the wage order.

21  **D.    PLAINTIFFS ARE NOT REQUIRED TO MEET RULE 23 REQUIREMENTS IN**
22          **ORDER TO MAINTAIN THE PAGA CLAIM**

23      The Ninth Circuit has not yet ruled on whether PAGA claims must be plead as a class

24  action consistent with Rule 23, and the district courts are split on this issue.

25      Courts in this District have held that PAGA claims "are fundamentally different from

26  class actions" and need not meet the requirements of Rule 23.  See, e.g., *Willner v. Manpower,*

27  *Inc.*, 2012 U.S. Dist. Lexis 62227, *26 (N.D. Cal. May 3, 2012); *Moua v. IBM*, 2012 U.S. Dist.

28  Lexis 11081, *10 (PAGA plaintiffs are not required to meet the class action standard contained in

WEINBERG, ROGER & ROSENFELD
A Professional Corporation

Rule 23).

In *Cardenes v. McLane Foodservice, Inc.*, 2011 U.S. Dist. LEXIS 13126, **5-6 (C.D. Cal. Jan. 31, 2011), the court rejected the blanket application of *Shady Grove Orthopedic Associates P.A. v. Allstate Ins. Co.*, 130 S.Ct. 1431 (2010) to PAGA claims that AT&T advocates in this motion. "[T]o characterize PAGA as 'wholly procedural … would be to ignore the intent of the legislature in passing the statute.' [*Holli Mendez v. Tween Brands, Inc.*, 2010 U.S. Dist Lexis 66454, *7 (E.D. Cal. June 13, 2010]." *Id.* at 6. In *Willner*, the defendant raised substantially the same arguments raised by AT&T in this motion, i.e., that PAGA is a procedural statute and is not determinative of the procedures required in federal court. Judge White's cogent analysis rejecting this argument, which relied in part on *Cardenes*, is persuasive:

> 'As other courts have observed, PAGA transcends the definition of what is simply procedural.'*Moua,* 2012 U.S. Dist. LEXIS 11081, *3; *see also Mendez v. Tween Brands, Inc.* , 2010 U.S. Dist.LEXIS 66454, 2010 WL 2650571, *3 (E.D. Cal. July 1, 2010) ('To find that PAGA creates a wholly procedural right, and that *Rule 23* therefore applies, would be to ignore the intent of the legislature in passing the statute.'). As distinct from class actions, '[t]he statute's plain purpose is to protect the public interest through a unique private enforcement process, not to allow a collection of individual plaintiffs to sue the same defendant in one consolidated action for the sake of convenience and efficiency.'*Moua* , 2012 U.S. Dist. LEXIS 11081 at *3. PAGA was enacted to alleviate the burden on the LWDA to enforce California Labor Code violations. *See Cal. Lab. Code 2698(d)*. 'In enacting the statute, the Legislature noted that shrinking resources necessitated the use of private enforcement of the Labor Code provisions, and that creating a right for private enforcement was in the public interest.' *Cardenas v. McLane Foodservice, Inc.*, 2011 U.S. Dist. LEXIS 13126, 2011 WL 379413, *2 (C.D. Cal. Jan. 31, 2011)(quoting *Cal. Lab. Code 2698(d)*). Therefore, courts have founds PAGA is a statute which 'is distinct in purpose and function from a purely procedural rule, such as the method for service of process or formatting a complaint.' *Mendez*, 2010 U.S. Dist. LEXIS 66454, 2010 WL 2650571 at *3; *see also Moua*, 2012 U.S. Dist. LEXIS 11081, 2012 WL 370570 at *3 ('Comparing PAGA to a statute or rule of procedure which merely directs the fine details of litigation unfairly minimizes this purpose.').

> Courts which have found PAGA claims do not need to comply with the class action requirements of *Rule 23* have focused on the distinctions between a PAGA representative action and a true class

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village Parkway, Suite 200
Alameda, California 94501
(510) 337-1001

action. *See, e.g.,Mendez* , 2010 U.S. Dist. LEXIS 66454, 2010 WL 2650571 at * 3 ('A PAGA claim, therefore, is fundamentally different from a class action in terms of both the interests represented and the relief sought.');*Cardenas*, 2011 U.S. Dist. LEXIS 13126, 2011 WL 379413 at * 3;*Sample v. Big Lots Stores, Inc.*, 2010 U.S. Dist. LEXIS 131130, 2010 WL 4939992 (N.D. Cal. Nov.30, 2010) ('[A] PAGA claim serves to vindicate the public through the imposition of civil penalties, as opposed to conferring a private benefit upon the plaintiff and the represented employees.'); *Ochoa-Hernandez v. CJADER Foods, Inc.*, 2010 U.S. Dist. LEXIS 32774, 2010 WL 1340777 (N.D. Cal. Apr. 2, 2010); *Machado v. M.A.T. & Sons Landscape, Inc.*, 2009 U.S.Dist. LEXIS 63414, 2009 WL 2230788 (C.D. Cal. July 23, 2009). As the court aptly explained in *Cardenas*:

> The PAGA statute contains no language or requirements concerning class actions. *Cal. Labor Code § 2699*. Rather, the statute allows 'aggrieved employees' to act as private attorneys general by bringing claims for civil penalties.*Id.* at*§ 2699(a)*. PAGA actions serve as alternatives to LWDA enforcement actions. *Id.* Seventy-five percent of the funds recovered go to LWDA. *Id.* at*§ 2699(i).* The remaining twenty-five percent go to the 'aggrieved employees' and serve as an incentive for such employees to bring enforcement actions in court. *Id.* As an action for penalties, a PAGA claim is distinct from a traditional action for damages. And a PAGA action does not preclude individuals from pursuing civil suits for damages under the Cal. Labor Code.*Id.* at*§ 2699(g).* Accordingly, PAGA plaintiffs do not hold the rights and obligations of a class in their hands.

> Since PAGA plaintiffs neither represent the rights of a class nor recover damages, a PAGA claim neither purports to be a class action nor intends to accomplish the goals of a class action. It is not brought 'on behalf of all [class] members,' so it is does not fall under the terms of *Rule 23*. Instead, a PAGA claim is a private law enforcement action designed to further the reach of the LWDA. *Cardenas* , 2011 U.S. Dist. LEXIS 13126, 2011 WL 379413 at * 3. *Willner*, 2012 U.S. Dist. Lexis 62227 at **22-25; see also *McKenzie v. Federal Express Corp.*, 765 F.Supp.2d 1222, 1232-1234 (C.D. Cal., April 14, 2011) (plaintiff need not certify a class before summary judgment on PAGA claim); *Thomas v. Aetna Healthcare of Cal.*, 2011 U.S. Dist. Lexis 59377 at * 38 (E.D. Cal., June 2, 2011)("Rule 23 certification is not necessary to the extent PAGA actions are brought in a non-class, representative capacity"); *Casida v. Sears Holding Corp.*, 2012 U.S.D. Lexis 9302, 8-9 (E.D. Cal. Jan. 25,

WEINBERG, ROGER & ROSENFELD
A Professional Corporation
1001 Marina Village Parkway, Suite 200
Alameda, California 94501
(510) 337-1001

15
Plaintiffs' Opposition to Motion to Dismiss and/or Strike Plaintiffs' Complaint (Case No. 4:11-cv-04749 CW)

2012) ("a PAGA claim asserted on a non-class representative basis … is not considered a class action but a law enforcement action, and therefore does not have to meet the requirements of Rule 23"); *Gonzalez v. Millard Mall Svcs.*, 2012 U.S. Dist. Lexis 28142, 42-43 (S.D. Cal. Feb. 28, 2012) (plaintiffs need not satisfy the class action requirements in representative action under PAGA).

Judge Davila employed a similar analysis in *Moua*, 2012 U.S. Dist. Lexis 11081 at *10, to conclude that "PAGA transcends the definition of what is simply procedural" and find that "PAGA plaintiffs are not required to meet the class action standard contained in Rule 23". This conclusion additionally addresses the concern that " 'by setting a different procedural standard in federal court, we would encourage forum shopping on the part of defendants, who would seek to remove cases to federal court in order to force plaintiffs to comply with class certification requirements.' *Mendez*, 2010 U.S. Dist. Lexis 66454, at *10. Allowing for that type of forum selection would certainly defeat the purpose of the statute." *Moua*, 2012 U.S. Dist. Lexis at **11-12.

Despite the lack of guidance from the Ninth Circuit, courts in the Northern District have thoroughly reviewed the issue of whether a PAGA plaintiff must meet the requirements of Rule 23 and has determined compliance is not required. The *Moua* and *Willner* decisions are persuasive; AT&T's motion must be denied.

## E.   AN AWARD OF PAGA PENALTIES WOULD NOT BE UNJUST, ARBITRARY, OPPRESSIVE, OR CONFISCATORY

AT&T argues that *any* award of penalties in this case would be unjust, arbitrary, oppressive and confiscatory, therefore justifying dismissal of this action. AT&T puts forward two arguments[6] in support of its position—(1) that IWC 7, § 14 was not intended to cover the retail sales industry; and (2) that penalties and attorney fees could be in the range of $20 million. Neither of these arguments justifies dismissal of this action. AT&T has the power to modify the workplace and can provide unobtrusive, ergonomic seating for work performed behind the

---

[6]   AT&T also reiterates its res judicata argument in support of its position. For the reasons stated above in § III B, the res judicata argument does not support AT&T's argument regarding penalties.

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village Parkway, Suite 200
Alameda, California 94501
(510) 337-1001

16

Plaintiffs' Opposition to Motion to Dismiss and/or Strike Plaintiffs' Complaint (Case No. 4:11-cv-04749 CW)

1   counter.  Its refusal to do so is exactly why PAGA was enacted—to allow aggrieved individuals

2   like the RSCs to maintain actions to enforce the laws enacted to protect them in the workplace.

3         With respect to its first argument, AT&T relies on a 1986 advisory opinion by the

4   Division of Labor Standards Enforcement ("DLSE"), and a subsequent letter from the IWC

5   issued in January 1987 affirming the DLSE's opinion.  See Exs. G, H.  As discussed above, these

6   advisory opinions are at distinct odds with the IWC opinions issued shortly after IWC 7-80 took

7   effect.  Exs. 4-6.  Much has changed in the past 25-years, and as the *Echavez* court noted, "[t]here

8   are numerous problems with Defendants' arguments that these opinions … bar Plaintiffs' claims"

9   *Id.*, 2012 U.S. Dist. Lexis 34381 at * 9 (addressing same letters):  "First, the language of § 14(B)

10   plainly makes protections available to employees for whom 'the nature of the work requires

11   standing,' and does not specifically exclude retail and sales floor employees.  Cal. Code Regs.

12   Tit. 8 § 11070(14)(B).  For these employees, 'an adequate number on suitable seats shall be

13   placed in reasonable proximity to the work area and employees shall be permitted to use such

14   seats when it does not interfere with the performance of their duties.'  *Id.*  The court also noted

15   that several courts have permitted seating claims under § 14 brought by persons holding retail and

16   sales floor positions to go forward.  *Id.* at * 10, citing *Bright*, 189 Cal.App.4th 1472 (seating

17   claim by cashier survives demurrer); *Home Depot*, 191 Cal.App.4th 210 (seating claim by

18   employees working at cashier and counter areas survives demurrer); *Brown v. Wal-Mart*, Case

19   No. 09-03339, slip op. (N.D. Cal. Oct. 19, 2010) (seating claim by cashier survives motion for

20   judgment on the pleadings); *Kilby*, 2010 U.S. Dist. Lexis 86515 (S.D. Cal. Aug 23, 2010) (seating

21   claim by drug store cashier survives motion to dismiss); *Murphy v. Target Corp.*, 2010 U.S. Dist.

22   Lexis 122178 (S.D. Cal. Jan. 11, 2010) (seating claim by cashier survives motion to dismiss);

23   *Currie-White v. Blockbuster, Inc.*, 2009 U.S. Dist. Lexis 68438 (N.D. Cal. Aug. 5, 2009)

24   (granting leave to amend to plead facts to support allegation nature of cashier work reasonably

25   permitted seats)[7]; see also *Garvey*, 2012 U.S. Dist. Lexis 51705 at * 4 (rejecting exclusion

26   argument).

27

28

---

[7]   The *Echavez* court rejected attempts to distinguish these cases on the grounds they all involved
claims "brought by employees primarily engaged in cashiering duties," because plaintiffs'
duties, like the RSCs here, involved cashiering.  *Id.*, 2012 U.S. Dist. Lexis at *11.

**WEINBERG, ROGER &**
**ROSENFELD**
A Professional Corporation
1001 Marina Village Parkway, Suite 200
Alameda, California 94501
(510) 337-1001

17

Plaintiffs' Opposition to Motion to Dismiss and/or Strike Plaintiffs' Complaint (Case No. 4:11-cv-04749 CW)

1    The language of PAGA addresses AT&T's second concern and offers protection from an

2  award that is unjust, arbitrary and oppressive, or confiscatory.  Cal. Labor Code § 2699(e)(2)

3  grants the court discretion to award less than the statutory maximum if the facts and

4  circumstances of the case so warrant.

5    To make a determination concerning penalties at the pleading stage based on the

6  possibility that AT&T might be subject to a large award and will have to spend time and money

7  defending itself is premature.  If less than the maximum civil penalty is to be awarded, the

8  decision must be made following a thorough examination of the facts and circumstances of this

9  case, including the reasons for AT&T's decision and the impact that decision has had on its

10  employees.  Moreover, the two arguments advanced by AT&T in support of its position are

11  insufficient to support a finding that an award of penalties would be unjust, arbitrary and

12  oppressive, or confiscatory; something more than a bare assertion is needed.

13  **F.      THE UCL CLAIM IS VIABLE**

14    Plaintiffs seek injunctive relief under Cal. Business & Professions Code § 17203 in the

15  UCL claim.  AT&T argues that because the UCL claim is wholly derivative of the IWC 7, § 14

16  claim, it too must fail.  For the reasons set forth above, the claim that AT&T violated IWC 7, § 14

17  is viable, and as such, the UCL claim cannot be dismissed for that reason.

18    AT&T's contention that the UCL claim is time barred also fails.  The equitable remedies

19  under the UCL permit "any consumer to combat unfair competition by seeking an injunction

20  against unfair business practices."  *Henry v. Lehman Commer. Paper, Inc.*, 471 F.3d 977, 996 (9th

21  Cir.2006).  AT&T argues that the discovery rule does not protect and ongoing violation, and that

22  in order for Plaintiffs' UCL claim to be viable, it should have been filed when AT&T started

23  removing seating in 2005, or when that task was completed in 2007.  Plaintiffs contend that the

24  violation of IWC 7, § 14 has been ongoing since at least July 7, 2010, and continues through the

25  present.  See Ex. A, ¶¶ 22, 32.  As such, the continuous accrual doctrine should be applied,

26  consistent with the purpose of the remedial wage orders to protect the health and welfare of

27  employees.  The request for injunctive relief will remedy the continuing conduct.

28

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village Parkway, Suite 200
Alameda, California 94501
(510) 337-1001

18
Plaintiffs' Opposition to Motion to Dismiss and/or Strike Plaintiffs' Complaint (Case No. 4:11-cv-04749 CW)

1   The statute of limitations presents yet another unresolved question. "California state

2   courts are split on whether the discovery rule applies to UCL claims. See *Grisham v. Phillip*

3   *Morris U.S.A., Inc.*, 40 Cal. 4th 623, 634 n.7 (2007) ('this point is currently not settled under

4   California law.'). Moreover, the California Supreme Court granted review of a case to consider

5   this very issue. *Aryeh v. Canon Business Solutions, Inc.*, 185 Cal. App. 4th 1159(2010), review

6   granted, 116 Cal. Rptr.3d 881, 240 P.3d 823 (Oct. 20, 2010, [S184929])." *James v. UMG*

7   *Recordings, Inc.*, 2012 U.S. Dist. LEXIS 55298, 10 (N.D. Cal. Apr. 19, 2012). Determination of

8   whether the UCL claim is time barred should be stayed pending the determination in *Aryeh.*

9

10   ### IV.   CONCLUSION

11   For all of the foregoing reasons, Plaintiffs respectfully request the Court deny AT&T's

12   motion in its entirety. If, however, the Court finds merit in AT&T's position, Plaintiffs

13   respectfully request they be granted leave to amend the complaint.

14   Dated: August 23, 2012              WEINBERG, ROGER & ROSENFELD
                                          A Professional Corporation

15                                        LOCKER FOLBERG

16

17                                        /S// *ROBERTA D. PERKINS*
                                   By:    DAVID A. ROSENFELD
18                                        ROBERTA D. PERKINS
                                          MILES E. LOCKER
19                                        Attorneys for Plaintiffs
20   129223/681330

21

22

23

24

25

26

27

28

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village Parkway, Suite 200
Alameda, California 94501
(510) 337-1001

19
Plaintiffs' Opposition to Motion to Dismiss and/or Strike Plaintiffs' Complaint (Case No. 4:11-cv-04749 CW)